IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMSC-022

Filing Date:   May 21, 2009

Docket No. 31,586

STATE OF NEW MEXICO,

    Plaintiff-Appellee,

v.

J. TYRONE RIORDAN,

    Defendant-Appellant.

INTERLOCUTORY APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY

Karen L. Parsons, District Judge

Gary C. Mitchell, P.C.
Gary C. Mitchell
Mandy Kaye Waldrop Denson
Ruidoso, NM

for Appellant

Gary K. King, Attorney General
Martha Anne Kelly, Assistant Attorney General
Santa Fe, NM

for Appellee

OPINION

PER CURIAM.

{1}    Defendant J. Tyrone Riordan has applied for interlocutory appeal of the trial court's order denying his motion requesting that Judge Karen Parsons recuse herself in three cases in which he is the defendant, including a case in which he was charged with capital murder. Defendant argues that because he was subsequently charged with conspiracy to commit

1

assault with a deadly weapon against Judge Parsons, she should recuse herself in the three pending cases to avoid an appearance of impropriety. We conclude that Judge Parsons did not abuse her discretion in denying Defendant's motion and therefore deny Defendant's application for interlocutory appeal.

## BACKGROUND

**{2}**     The record shows that Defendant has charges pending against him in three  cases assigned to Judge Parsons. In the first case, filed on May 18, 2007, Defendant was charged with capital murder, tampering with evidence, and conspiracy to commit tampering with evidence. In the second case, filed on June 29, 2007, Defendant was charged with five counts of criminal sexual penetration and five counts of contributing to the delinquency of a minor. In the third case, filed on November 30, 2007, Defendant was charged with escape or attempted escape from jail.

**{3}**     On June 26, 2008, while these cases were pending, Defendant was charged with conspiring to commit an assault with a deadly weapon on Judge Parsons. When the conspiracy to commit assault case was filed, all the judges in the Twelfth Judicial District, including Judge Parsons, recused themselves from hearing the case. Defendant then filed a motion in the trial court requesting that Judge Parsons recuse herself from hearing his other three pending cases. Judge Parsons denied the motion, but certified for interlocutory appeal the issue of whether her status as an alleged victim in the conspiracy to commit assault case required her to recuse in the three pending cases to avoid creating an appearance of impropriety. Defendant filed an application for interlocutory appeal in the Court of Appeals, which denied the application pursuant to *State v. Smallwood*, 2007-NMSC-005, ¶ 10, 141 N.M. 178, 152 P.3d 821 (holding that this Court has jurisdiction to hear interlocutory appeals in cases involving a sentence of life imprisonment or death). Defendant then filed his application for interlocutory appeal in this Court.

## DISCUSSION

**{4}**     Pursuant to NMSA 1978, Section 39-3-3(A) (1972), Defendant seeks interlocutory appeal in all three cases, including the capital case. "Allowance of an interlocutory appeal is discretionary with the appellate court." *State v. Hernandez*, 95 N.M. 125, 126, 619 P.2d 570, 571 (Ct. App. 1980). We first discuss the application in the capital case before addressing the applications in the non-capital cases.

## THE CAPITAL CASE

**{5}**      This Court is "vested by law with exclusive appellate jurisdiction in cases involving a sentence of life imprisonment or death," which extends under Section 39-3-3(A) to jurisdiction over interlocutory appeals in such cases. *Smallwood*, 2007-NMSC-005, ¶ 10. In the case before us, Defendant was charged with capital murder under NMSA 1978, Section 30-2-1 (1994). At the time Defendant allegedly committed the offense resulting in

2

the capital murder charge, a conviction for a capital offense was punishable by a sentence of life imprisonment or death. *See* NMSA 1978, § 31-18-14(A) (1993, prior to 2009 amendments). Accordingly, because Defendant was charged with a capital crime, this Court has appellate jurisdiction to review Defendant's application for interlocutory appeal.

**{6}** Regarding Defendant's motion requesting that Judge Parsons recuse herself from his cases, recusal rests within the discretion of the trial judge, and will only be reversed upon a showing of an abuse of that discretion. *Demers v. Gerety*, 92 N.M. 749, 752, 595 P.2d 387, 390 (Ct. App. 1978), *rev'd in part on other grounds*, 92 N.M. 396, 406, 589 P.2d 180, 190 (1978). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo,* 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citations omitted). Although Defendant argues that the question before us is one of law that should be reviewed de novo, disqualification requires an examination of the specific facts in the case. *See United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008).

**{7}** Defendant argued to the trial court that Judge Parsons' recusal was required to avoid an appearance of impropriety. In addition, Defendant argues in his application that both the New Mexico Constitution and the Victims of Crime Act give Judge Parsons a constitutionally vested interest in the outcome of the conspiracy to commit assault case, which prevents her from being impartial. *See* N.M. Const. art. II, § 24; NMSA 1978, §§ 31-26-1 to 31-26-14 (1994, as amended through 2005).

**{8}** Rule 21-200 NMRA provides that "[a] judge shall avoid impropriety and the appearance of impropriety in all the judge's activities." The committee commentary to Rule 21-200 defines an appearance of impropriety as "conduct [that] would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired[.]" Consistent with this admonition, Rule 21-400(A) NMRA states that "[a] judge is disqualified and shall recuse himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned[.]"

**{9}** Stating that no New Mexico case is directly on point, Defendant relies on *United States v. Greenspan*, 26 F.3d 1001 (10th Cir. 1994), to argue that because Judge Parsons knew she was allegedly the intended victim of a conspiracy to commit assault with a deadly weapon, her impartiality toward Defendant might reasonably be questioned, and thus her recusal was required. In *Greenspan*, shortly before a federal judge was scheduled to sentence a defendant on drug charges, the FBI told the judge of an alleged conspiracy to assassinate him and reported that the defendant in the drug case was involved in the conspiracy. *Id.*, 26 F.3d at 1006. The Tenth Circuit held that the judge should have recused himself under 28 U.S.C. Section 455(a), which, like Rule 21-400, states that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." *See Greenspan*, 26 F.3d at 1007.

3

**{10}**     The Tenth Circuit applied "[S]ection 455(a)'s objective standard" to "decide whether the judge's impartiality might reasonably have been questioned in this particular case." *Id.* at 1006. The court acknowledged that "threats or attempts to intimidate a judge will not ordinarily satisfy the requirements for disqualification[.]" *Id.* Indeed, the court stated that "if a death threat is communicated directly to the judge by a defendant, it may normally be presumed that one of the defendant's motivations is to obtain a recusal[.]" *Id.* However, in reaching its conclusion that the judge should have recused himself, the court focused on the judge's knowledge of the threat and its effect on the totality of the circumstances surrounding the sentencing hearing. *Id.* Specifically, the court observed that after being told of the threat, the judge had "accelerated the date of Greenspan's sentencing, for the stated reason that the court wanted to get Greenspan into the penitentiary system as quickly as possible," and that the judge had "refused to grant a continuance of the sentencing hearing even though defendant's counsel had been appointed only two days before the sentencing date." *Id.* Under those circumstances, the court reasoned, "[a]lthough any one of these actions standing alone would not provide sufficient reason to believe a judge was biased against the defendant, when considered in light of the judge's knowledge of the alleged threats against him, these factors might provide further bases for questioning the court's impartiality." *Id.* Thus, the court was convinced by the record that "the judge's impartiality might reasonably be questioned," and held that his recusal was required. *Id.*

**{11}**     The holding in *Greenspan* does not persuade us that Judge Parsons should have recused herself from presiding over Defendant's other three pending cases. Judge Parsons' knowledge of the threat against her is not, in itself, a reason to require disqualification. Indeed, a different federal appellate court has specifically noted that it was "wary" of the Tenth Circuit's focus on the judge's awareness of the threat against him described in *Greenspan*. *In re Basciano*, 542 F.3d 950, 957 n.6 (2nd Cir. 2008). In *Basciano*, in determining whether a trial judge must recuse when learning of evidence that the defendant has plotted or threatened to kill the judge, the Second Circuit wrote that "we must focus first on whether 'an objective, disinterested observer[,] fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal.'" *Id.* at 956 (quoting *United States v. Amico*, 486 F.3d 764, 775 (2nd Cir. 2007)). The court stated that when there is a "significant possibility" that the defendant is attempting to manipulate the system, deference should be given to the decision of the trial judge. *Id.* at 957. In determining whether an objective observer would conclude that a judge's impartiality was questionable, an appellate court should look to see how the judge arrived at the decision not to recuse and then should review the judge's actions for bias. *Id.*

**{12}**     In the case before us, the State argued to the trial court that Defendant's conduct of refusing to leave his cell for court proceedings, refusing to confer with his attorneys, refusing to eat, and refusing medical treatment demonstrated a pattern of obstruction and delay. Thus, there was evidence before the trial court that Defendant may have been attempting to manipulate the system. In addition, in contrast to *Greenspan*, the judge found "that no objective evidence of bias on the part of the Court has been presented and that under the circumstances of this case there is no appearance of impropriety for the Court to remain on

4

these cases."

**{13}** In addition, we are persuaded that recusal should not automatically be required when a judge is threatened. *See Basciano*, 542 F.3d at 956 (listing cases concluding that recusal is not ordinarily required when a judge faces threats). *State v. Robinson*, 2008-NMCA-036, ¶ 10, 143 N.M. 646, 179 P.3d 1254 is also instructive. In *Robinson*, our Court of Appeals addressed the situation of when threats against a prosecutor require the prosecutor's removal and held that a prosecutor does not have to be removed from a case simply because the defendant has threatened the prosecutor. *Id.*, ¶ 24. The court reasoned that "as [a] matter of policy, a defendant does not create a disqualifying interest and cannot choose his or her prosecutor for an underlying offense by the use of threats." *Id.* Of direct import to the issue before us, the Court of Appeals quoted *Resnover v. Pearson*, 754 F. Supp. 1374, 1388-89 (N.D. Ind. 1991) for the principle that "[t]he law is clear that a party, including a defendant in a criminal case, cannot drive a state trial judge off the bench in a case by threatening him or her."). 2008-NMCA-036, ¶ 24. We endorse this statement as a sound principle to apply to the issue of recusal when a judge is threatened by a defendant.

**{14}** Consistent with the view that absent some showing of bias, threats alone do not require recusal, we have held that in the context of contempt hearings, recusal is only required "when a judge has become so embroiled in the controversy that he cannot fairly and objectively hear the case[.]" *State v. Stout*, 100 N.M. 472, 475, 672 P.2d 645, 648 (1983). We agree, therefore, with the requirement in the federal cases that the facts and circumstances of the case must demonstrate that "the defendant's behavior has resulted in actions by the judge which might be viewed by 'an objective, disinterested observer' as evidencing bias." *Basciano*, 542 F.3d at 957.

**{15}** Neither party provides us with a detailed account of the evidentiary hearing on the recusal motion, and we note that it is the appellant's burden under Rule 12-203(B) NMRA to provide this Court with "a statement of the facts necessary to an understanding of the controlling question of law[.]" However, the State represents that Defendant "offered no examples of actual bias" and the judge stated that she had no personal bias or animosity toward Defendant. Moreover, in the order denying Defendant's motion, the court found "that no objective evidence of bias on the part of the Court has been presented and that under the circumstances of this case there is no appearance of impropriety for the Court to remain on these cases." Under these circumstances, where the judge held a hearing at which no evidence was presented that the judge demonstrated bias against Defendant, we presume Judge Parsons correctly declined to recuse herself from hearing Defendant's cases. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (stating that there is a presumption of correctness in the rulings or decisions of the trial court, and the party claiming error bears the burden of showing such error).

**{16}** Defendant also argues that Judge Parsons' status as an alleged victim in an unrelated case involving Defendant (in which Judge Parsons has recused) gives her "a constitutionally vested interest" in the case, which requires recusal in the pending cases under Rule 21-

5

400(A). Specifically, Defendant contends that because Article II, Section 24 of the New Mexico Constitution and the Victims of Crime Act, §§ 31-26-1 to 31-26-14, provide victims of crimes with additional rights in court proceedings, this unique constitutional provision makes federal case law inapplicable. Defendant's application does not indicate, however, that this argument was made to the trial court, and the court does not address it in its order. Assuming that this argument was preserved, we are not persuaded that Article II, Section 24 of either the New Mexico Constitution or the Victims of Crime Act alters our analysis of this case.

**{17}** Both Article II, Section 24 and Section 31-26-3 provide victims of specific crimes listed in the Constitution and the Act with defined rights in judicial proceedings. Judge Parsons is the alleged victim of conspiracy to commit aggravated battery, criminal damage to property, and possession of a deadly weapon. None of these offenses are listed in Article II, Section 24 or Section 31-26-3, for which rights are granted. Perhaps more importantly, Judge Parsons does not have any "victim's rights" in Defendant's cases that are pending before her. As a result, neither the New Mexico Constitution nor the Victims of Crime Act gives Judge Parsons any additional rights that affect our analysis or would require her recusal under Rule 21-400. Accordingly, we deny Defendant's application for interlocutory appeal from the trial court's denial of his motion requesting her recusal in the capital case.

## THE NON-CAPITAL CASES

**{18}** As discussed above in *Smallwood*, we concluded that "the legislature intended for us to have jurisdiction over interlocutory appeals in situations where a defendant may possibly be sentenced to life imprisonment or death." 2007-NMSC-005, ¶ 11.

**{19}** The offenses with which Defendant was charged in the other two cases assigned to Judge Parsons are fourth degree felonies, not capital crimes. Therefore, jurisdiction over the interlocutory appeals from the trial court's order in those cases lies in the Court of Appeals, and we deny the application on those grounds. *See* NMSA 1978, § 34-5-8(A)(3) (1983); § 39-3-3. Although the Court of Appeals denied Defendant's application, believing that it lacked jurisdiction, Defendant did not petition this Court for a writ of certiorari in those cases. We note, however, that such a petition would have been denied for the reasons set out in this opinion.

## CONCLUSION

**{20}** For the foregoing reasons, Defendant's application for interlocutory appeal is denied.

**{21}** **IT IS SO ORDERED**.

EDWARD L. CHÁVEZ, Chief Justice

6

_____
**PATRICIO M. SERNA, Justice**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**RICHARD C. BOSSON, Justice**


_____
**CHARLES W. DANIELS, Justice**

**Topic Index for** *State v. Riordan,* **No. 31,586**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-AJ | Appellate Jurisdiction |
| AE-IA | Interlocutory Appeal |
| AE-ST | Standard of Review |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-CI | Capital Punishment |
| CA-EH | Evidentiary Hearing |
| CA-SN | Sentencing |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-AS | Assault |
| CL-CS | Conspiracy |
| CL-MU | Murder |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-FT | Fair Trial |
| | |
| **JG** | **JUDGES** |
| JG-AD | Abuse of Discretion |
| JG-CC | Code of Judicial Conduct |
| JG-DS | Disqualification |
| JG-EX | Excusal or Recusal |
| JG-PC | Propriety of Conduct |
| | |
| **RE** | **REMEDIES** |
| RE-CR | Criminal Contempt |